**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ANTONIO MCCORMACK,

Plaintiff,

v. Civ. No. 25-677 GBW/GJF

GARY W CADDELL and
WHITE TRANSPORTATION
SERVICES, INC.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendants' Motion for Partial Summary Judgment on Punitive Damages. *Doc. 64*. Having reviewed the briefing and relevant law, the Court will grant the motion for the reasons set out below.

## I. BACKGROUND

Plaintiff filed this action on May 29, 2025, asserting claims against Defendants White Transportation Services, Inc. ("White Transportation") and Gary W. Caddell based on a collision between Plaintiff's vehicle and a tractor-trailer operated by Mr. Caddell. *Doc. 1-1*. The case was removed on July 18, 2025. *Doc. 1*. Plaintiff filed the operative Amended Complaint on August 1, 2025, alleging claims of negligence and negligence per se against Mr. Caddell and claims of negligence; negligent hiring, training, supervision, and retention; and negligent entrustment against White

Transportation. *Doc. 17*. On November 24, 2025, the Court dismissed the claims of negligent entrustment, hiring, training, supervision, and retention for failure to state a claim. *Doc. 34*. Plaintiff was granted the opportunity to file a second amended complaint, *id*. at 12, but did not do so.

Defendants now move for partial summary judgment on Plaintiff's claims for punitive damages. *Doc. 64*. Plaintiff filed a response, and Defendants filed a reply.[1] *Docs. 68*, *69*. The motion is before the Court.

## II. UNDISPUTED FACTS

Based on the parties' briefing and the record as a whole, the Court finds the following material facts are undisputed for the purposes of summary judgment:[2]

1. This case arises from an automobile accident that occurred on April 3, 2024, on Highway 380 in Tatum, Lea County, New Mexico. DUMF 1.

2. Gary Caddell was employed with White Transportation at the time of the accident. DUMF 3.

[1] Defendants attached three exhibits to the reply brief. *Docs. 69-1*, *69-2*, *69-3*. "Generally, the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply." *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005) (quotations and citations omitted). "Material" includes new evidence. *Id*. However, "[i]f the district court does not rely on the new material in reaching its decision . . . it does not abuse its discretion by precluding a surreply." *Id*. The Court finds it is unnecessary to consider the new material raised in Defendants' reply brief and does not do so here.

[2] "DUMF" refers to Defendants' Statement of Undisputed Facts. *Doc. 64* at 2–5. "PUMF" refers to Plaintiff's Undisputed Material Facts. *Doc. 68* at 9–12. Where the Court cites one of the parties' material facts, it does so pursuant to Rule 56(e)(2) because the fact in question was not specifically disputed. *See* Fed. R. Civ. P. 56(e)(2). Where the Court cites to evidence in the record, it does so pursuant to Rule 56(c)(3), which permits consideration of "other materials in the record." Fed. R. Civ. P. 56(c)(3).

3. White Transportation maintained the tractor involved in the accident and performed routine maintenance and repairs. DUMF 29.

4. Mr. Caddell has held a Commercial Driver's License since 2001. DUMF 5.

5. Until the collision with Plaintiff, Mr. Caddell was not involved in any accidents and did not receive any traffic citations since being hired by White Transportation in 2021, or at any time in the preceding three years. DUMF 3, 6, 7, 8, 9.

6. White Transportation required Mr. Caddell to complete an employment application, orientation, pre-employment drug screen, and DOT physical examination before operating its equipment. DUMF 11, 15, 16.

7. On August 2, 2023, Mr. Caddell successfully completed a New Mexico Level III Driver Inspection during which no violations were reported. DUMF 18.

8. Mr. Caddell did not take any medication during the twenty-four hours preceding the collision. DUMF 24.

9. Mr. Caddell was operating a 53-foot, loaded refrigerated trailer at the time of the collision, with an estimated weight of approximately 40,000 pounds. PUMF A.

10. On the day of the collision, the weather was clear and sunny, with no rain and nothing obstructing Mr. Caddell's view. PUMF B.

11. Mr. Caddell had been traveling directly behind Plaintiff's vehicle for approximately twenty-five minutes and observed Plaintiff's vehicle prior to the collision. PUMF C.

12. Mr. Caddell admitted that had he left enough distance between his vehicle and the vehicle in front of him, he would have had sufficient time to stop safely. PUMF D.

13. Mr. Caddell knew that as a truck driver, hauling 40,000 pounds, it was important to leave extra space so that he could safely stop. PUMF E.

14. Investigating Officer Deputy Donavan Rowell's review of the dashboard camera footage from Mr. Caddell's tractor-trailer determined that Mr. Caddell attempted to pass Plaintiff's vehicle on the right, by crossing over the fog line and out of the appropriate lane of travel. PUMF H.

15. Following the collision, Deputy Roswell cited Mr. Caddell for Following too Closely in violation of NMSA § 66-7-318. PUMF G; *doc. 68-4* at 4.

16. Following its review of the accident and dashboard camera footage, White Transportation determined that the accident involved unsafe driving in the form of "an unsafe pass" on the right, and terminated Mr. Caddell's employment. DUMF 31; PUMF F; *doc. 68-1* at 9, 34:3–11.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), the Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing "that there is an absence of evidence to

support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party is then required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Celotex*, 477 U.S. at 324. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citations omitted).

In applying this standard, the Court must draw all "reasonable inferences" in favor of the non-moving party. *Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir. 1998). Summary judgment is appropriate only "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## IV. ANALYSIS

Defendants move for summary judgment as to punitive damages. *Doc. 64*. Plaintiff contends that there are genuine issues of material fact with respect to culpability, and in the alternative, that the Court should defer consideration of the motion under Rule 56(d). *Doc. 68*.

### A. Rule 56(d) Request

Plaintiff asks the Court to deny Defendants' motion as premature because discovery has not yet closed and some relevant evidence has not been obtained. *Doc. 68* at 18–19. Rule 56(d) allows the court to defer consideration of a summary judgment motion where the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). To obtain relief, the nonmovant must provide an affidavit or declaration

> (1) identifying the probable facts that are unavailable, (2) stating why these facts cannot be presented without additional time, (3) identifying past steps to obtain evidence of these facts, and (4) stating how additional time would allow for rebuttal of the adversary's argument for summary judgment.

*Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017). Information that is not included in the affidavit may not be considered. *See id.* ("The Cervenys' summary judgment response arguably contains the information required in Rule 56(d). But we may not look beyond the affidavit in considering a Rule 56(d) request."). Rule 56(d) motions are expected to be "robust," and "'an affidavit's lack of specificity' counsels against a finding that the district court abused its discretion in denying a request for additional discovery." *Birch v. Polaris Indus.*, 812 F.3d 1238, 1249–50 (10th Cir. 2015) (quoting *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1206 (10th Cir. 2015)).

Despite the rule's clear requirement, Plaintiff did not file an affidavit or declaration in support of his request for Rule 56(d) relief. This failure is itself sufficient

to justify denial of a Rule 56(d) request. *See Spann v. Nat'l Conf. of Bar Exam'rs*, 166 F.4th 1201, 1209 (10th Cir. 2026) ("Plaintiff did not file an affidavit or declaration, an omission that itself would be dispositive."). Because of this fatal procedural deficiency, the Court will deny Plaintiff's request to defer ruling under Rule 56(d).

In the alternative, even if the Court were to consider the contents of Plaintiff's response brief, it would deny the request as substantively deficient. Plaintiff seeks the following evidence: (1) the complete Samsara data for the vehicle operated by Mr. Caddell at the time of the crash; (2) Mr. Caddell's complete driver logs, hours-of-service records, pre-trip and post-trip inspection records, fuel records, dispatch records, and trip documents for the days and weeks leading up to the collision; (3) Mr. Caddell's cell phone records leading up to and following the collision; and (4) the deposition of Joey Gray, Mr. Caddell's immediate supervisor at White Transportation. *Doc. 68* at 17–18. He argues this evidence is necessary to demonstrate Mr. Caddell's fatigue, distraction, and/or adherence to hours-of-service requirements, any time pressure created by White Transportation, and White Transportation's compliance with federal safety requirements. *Id*. Although Plaintiff's brief contains some explanation about the relevance of the requested evidence to the claims on summary judgment, it does not specifically identify the "probable facts" that are unavailable. *See Cerveny*, 855 F.3d at 1110. For example, although Plaintiff asserts that some of the requested evidence is "directly relevant to fatigue, scheduling, time pressure, and Defendants' compliance

with federal safety requirements," *doc. 68* at 18, Plaintiff does not actually state as probable facts that Mr. Caddell was fatigued or under time pressure, or that Defendants failed to comply with any particular federal safety requirements. The response brief likewise does not explain what efforts have been made to obtain the evidence. While the Court recognizes that discovery will not close in this case until September 30, 2026, *see doc. 78*, a scheduling order was first issued and discovery commenced on September 2, 2025, *see doc. 30*. Even assuming that the parties chose to delay the start of discovery until the motion to dismiss was resolved on November 24, 2025, Plaintiff has had approximately eight months to obtain any critical evidence. Some explanation of his efforts to do so was therefore warranted.[3] *See, e.g.*, *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, LTD*, 616 F.3d 1086, 1096 (10th Cir. 2010) (affidavit was insufficient where it listed the materials sought but "fail[ed] to identify what efforts the O'Hara Defendants had made already to obtain the information they sought"). For these reasons, even if the Court were to consider the contents of Plaintiff's brief in lieu of a properly filed declaration or affidavit, the Rule 56(d) request would be denied.

[3] Incidentally, Defendants' reply brief provides some explanation for the delay: "Defendants already objected, in discovery, to providing Plaintiff with this information based on this Court's dismissal of Plaintiff's claims of negligent hiring, negligent training, negligent supervision, negligent retention and negligent entrustment." *Doc. 69* at 11. But it was clearly Plaintiff's burden under Rule 56(d) to produce an affidavit "identifying past steps to obtain evidence of these facts," *Cerveny*, 855 F.3d at 1110, and the explanation subsequently provided by Defendants' counsel does not cure the critical deficiency in Plaintiff's request. In addition, it is not clear when this objection was communicated or what steps Plaintiff has since taken to obtain the evidence.

B. Punitive Damages

Defendants move for partial summary judgment as to punitive damages only. *Doc. 64*. "Under New Mexico law, defendants may be liable for punitive damages under either a direct liability theory or a vicarious liability theory." *Tom v. S.B. Inc.*, Civ. No. 10-1257 LH/WPL, 2013 U.S. Dist. LEXIS 192694, at *19 (D.N.M. Mar. 6, 2013) (citing UJI Civ. 13-1827 NMRA). Punitive damages cannot be supported by "mere negligence or inadvertence." *Gonzales v. Sansoy*, 703 P.2d 904, 907 (N.M. Ct. App. 1984) (citation omitted). "To be liable for punitive damages, a wrongdoer must have some culpable mental state and the wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level." *Clay v. Ferrellgas, Inc.*, 881 P.2d 11, 14 (N.M. 1994) (citations omitted). The relevant mental states are described in the Uniform Jury Instructions:

> Malicious conduct is the intentional doing of a wrongful act with knowledge that the act was wrongful. Willful conduct is the intentional doing of an act with knowledge that harm may result. Reckless conduct is the intentional doing of an act with utter indifference to the consequences. When there is a high risk of danger, conduct that breaches the duty of care is more likely to demonstrate recklessness. Wanton conduct is the doing of an act with utter indifference to or conscious disregard for a person's [rights] [safety].

UJI Civ. 13-1827 NMRA.

i. *White Transportation*

Because the claims for negligent entrustment, hiring, training, supervision, and retention were dismissed, *see doc. 34*, and Plaintiff has proffered no evidence to support

those claims or any other theory of direct liability,[4] Plaintiff's claim for punitive damages against White Transportation must depend on vicarious liability. Under New Mexico law, a corporate defendant

> may be held liable for punitive damages for the misconduct of its employees if: (1) corporate employees possessing managerial capacity engage in conduct warranting punitive damages; (2) the corporation authorizes, ratifies, or participates in conduct that warrants punitive damages; or (3) under certain circumstances, the cumulative effects of the conduct of corporate employees demonstrate a culpable mental state warranting punitive damages.

*Chavarria v. Fleetwood Retail Corp.*, 143 P.3d 717, 725 (N.M. 2006) (citations omitted). Plaintiff contends that White Transportation performed no investigation into the collision beyond reviewing the dashboard camera footage, did not require Mr. Caddell

---

[4] It is not entirely clear whether Plaintiff intended, in his response brief, to revive the dismissed claims or to argue any other theories of direct liability. His brief notes that the claims were dismissed "without prejudice, meaning Plaintiff can re-raise those same claims," *doc. 68* at 2–3, but cites no authority demonstrating his ability to do so without leave of the Court. Notably, Plaintiff declined to file a second amended complaint when given leave to do so. *See doc. 34* at 12. Plaintiff asserts that Defendants' stated facts relating to Mr. Caddell's hiring, training, competence, and safety record are immaterial, *see doc. 68* at 3–9, which suggests that he does not intend to re-raise the dismissed claims; however, he also proffers facts of his own involving White Transportation's failure to perform a criminal background check or driving test, *see id*. at 11, which would appear to be relevant only if the dismissed claims are considered.

At any rate, Defendants present undisputed evidence that prior to the collision with Plaintiff, Mr. Caddell was not in any accidents any did not receive any traffic citations during his employment with White Transportation or in the preceding three years; that he completed an employment application, orientation, pre-employment drug screen, and DOT physical examination before operating White Transportation's equipment; and that he successfully completed a New Mexico Level III Driver Inspection on August 2, 2023. DUMF 6, 7, 8, 9, 11, 15, 16, 18. Plaintiff has proffered no evidence showing that White Transportation knew or should have known Mr. Caddell was unfit to operate its vehicle or dangerous to other drivers. Plaintiff has neither argued nor shown that White Transportation had a duty to complete a criminal background check and driving test, or that its failure to do so caused the accident with Plaintiff. Plaintiff likewise has produced no evidence to support his allegations that White Transportation failed to perform safety checks or to place the vehicle out of service "due to inadequate brakes," *doc. 17* at ¶ 24. The Court therefore finds no basis in the record evidence to award punitive damages against White Transportation under a theory of direct liability.

to complete an incident report, and did not require Mr. Caddell to submit to required alcohol testing within eight hours following the collision,[5] and that these facts are "relevant to Defendant White's knowledge, response, ratification, and cumulative corporate conduct." *Doc. 68* at 16.

Plaintiff does not explain how White Transportation's post-accident conduct—i.e., its failure to conduct additional investigation and/or require alcohol testing—establishes the requisite culpability. While a corporation "can ratify the acts of its agents by acquiescence in or acceptance of the unauthorized acts," *Chavarria*, 143 P.3d at 727 (quoting *Albuquerque Concrete Coring Co. v. Pan Am World Servs., Inc.*, 879 P.2d 772, 776 (N.M. 1994)), there is no indication that White Transportation did so here. It is undisputed that White Transportation terminated Mr. Caddell's employment because, after reviewing the dashboard camera footage, management determined that his driving was unsafe. There is no evidence to suggest that White Transportation ignored Mr. Caddell's alleged misconduct, authorized it, or failed to take remedial steps. *C.f.*

[5] Plaintiff relies for this proposition 49 C.F.R. § 382.303, a section of the Federal Motor Carrier Safety Regulations (FMCSR). Section 382.303 requires employers to conduct post-accident alcohol testing of a commercial vehicle driver "[w]ho receives a citation within 8 hours of the occurrence under State or local law for a moving traffic violation arising from the accident, if the accident involved . . . [o]ne or more motor vehicles incurring disabling damage as a result of the accident." 49 C.F.R. § 382.303(a)(2)(ii). If an alcohol test is not administered as required, the regulation states that the employer "shall prepare and maintain on file a record stating the reasons the test was not promptly administered." *Id.* § 382.303(d)(1). Plaintiff does not purport to bring a standalone claim under the FCSMR, nor does it appear he would be able to do so. *See Leon v. FedEx Ground Package Sys.*, 2016 U.S. Dist. LEXIS 30281, at *28–29, 31–33 (D.N.M. Feb. 16, 2016) (collecting cases and concluding that "there is no federal private right of action allowing personal injury or wrongful death plaintiffs to hold defendants liable for violations of the FMCSR").

*Chavarria*, 143 P.3d at 727–28 (finding evidence of ratification where the employer knew about its employees' misconduct but paid them full commission for the fraudulent sale, and did not discipline or fire them until another customer complained). The fact that White Transportation did not conduct additional investigation when it had already decided to terminate Mr. Caddell's employment, and that it did not succeed in arranging alcohol testing within eight hours,[6] cannot reasonably be viewed as evidence of authorization, ratification, or participation in his conduct.

There is likewise no evidence to support a cumulative conduct theory of punitive damages. In *Clay*, the New Mexico Supreme Court held that courts must "view[] the actions of the employees in the aggregate to determine whether [the employer] had the requisite culpable mental state because of the cumulative conduct of the employees." 881 P.2d at 15. The decision in *Clay* "did not alter New Mexico's general rule that punitive damages are not imposed on an employer for the acts of an employee as a matter of simple respondeat superior." *Grassie v. Roswell Hosp. Corp.*, 258 P.3d 1075, 1086 (N.M. Ct. App. 2010) (citation omitted). It has no application where punitive damages are "based on a single, isolated unauthorized and unexpected act of negligence by an employee." *Clay*, 881 P.2d at 16 (quoting *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 390 (Ky. 1985)). Here, the claims are based on a single traffic

[6] The testimony submitted by Plaintiff, which is uncontradicted by any other evidence of record, states that White Transportation called facilities in an attempt to arrange alcohol testing but was unable to locate a facility that Mr. Caddell could reach before the time window expired. *Doc. 68-1* at 14, 42:22–25.

accident allegedly caused by Mr. Caddell's poor judgment. There is no evidence that the accident occurred because of contributing misconduct by other employees, or because of corporate policy that allowed one employee to be "unaware of the conduct" of another with "potentially disastrous consequences," *Clay*, 881 P.2d at 16. The Court therefore finds no evidence to support punitive damages based on cumulative conduct. Because there is no genuine dispute of material fact with respect to punitive damages, White Transportation is entitled to summary judgment.

ii. *Mr. Caddell*

Plaintiff argues punitive damages are warranted against Mr. Caddell because the conduct that caused the accident—following too closely and attempting a right-side pass—was reckless. *Doc. 68* at 15. Plaintiff contends Mr. Caddell was

> an incredibly experienced driver who is hauling a 40,000-pound load, who knows the importance of leaving sufficient space, and who knows the dangers associated with unsafe driving, who is following too closely and who then decides to perform a dangerous and wholly inappropriate overtake on the right side of a vehicle, and who crosses over a fog line into an inappropriate lane of travel to do so.

*Id*. Defendants contend that Mr. Caddell's conduct was negligent at most. *Doc. 64* at 8–10.

In cases involving traffic accidents, New Mexico courts have "upheld punitive damages awards when drivers used alcohol or drugs, drove while intoxicated and suffering from an extreme lack of sleep, and drove erratically or far beyond the speed limit." *Bussey v. Kenworth Truck Co.*, Civ No. 25-605 JB/KRS, 2026 U.S. Dist. LEXIS

155428, at *34 (D.N.M. July 14, 2026) (collecting cases). While culpability is fact-specific, these cases provide useful guidance about the circumstances that may warrant punitive damages. "Evidence showing that a wrongdoer was intoxicated while driving is a sufficient basis for imposing punitive damages." *Sanchez v. Wiley*, 946 P.2d 650, 655 (N.M. Ct. App. 1997) (citations omitted). Evidence that the driver pled guilty to reckless driving for the same conduct that caused the accident is also sufficient, *Svejcara v. Whitman*, 487 P.2d 167, 168 (N.M. Ct. App. 1971), as is the combination of drug use and extreme lack of sleep:

> Evidence that DeMatteo drove three to four hours the day before the accident, slept about five hours in his car, remained awake for the next twenty hours immediately prior to the accident, and then consumed marijuana shortly before the accident allowed the jury to conclude that punitive damages were warranted because DeMatteo displayed an utter indifference for the safety of others when he decided to drive.

*DeMatteo v. Simon*, 812 P.2d 361, 364 (N.M. Ct. App. 1991).

The facts presented here are not comparable. Viewed in the light most favorable to Plaintiff, the evidence shows that the accident occurred because Mr. Caddell was following too closely and, when Plaintiff began to slow down, attempted an unsafe pass on the right. *See doc. 68-4* at 3–4; *doc. 68-3* at 9, 55:6–19. Mr. Caddell admitted at deposition that if he had left "a safe distance" between his tractor-trailer and the vehicle in front, he would have had time to slow down.[7] *Doc. 68-3* at 13–14, 68:12–69:1. While

[7] Mr. Caddell testified as follows:

certainly relevant to negligence, these facts do not establish the requisite culpability for punitive damages. There is no evidence of aggravating circumstances from which a reasonable factfinder could conclude that Mr. Caddell acted "intentional[ly] . . . with utter indifference to the consequences," UJI Civ. 13-1827 NMRA. He was cited for a violation of § 66-7-318, which prohibits, inter alia, "follow[ing] another vehicle more closely than is reasonable and prudent." NMSA § 66-7-318(a); *see doc. 68-4* at 4. This language describes negligence rather than recklessness. *C.f. Svejcara*, 487 P.2d at 168. Plaintiff has presented no evidence that Mr. Caddell was speeding, intoxicated, severely sleep-deprived, using his cell phone,[8] or otherwise displaying "utter indifference to the safety of others," *DeMatteo*, 812 P.2d at 364. The State of New Mexico Uniform Crash Report completed by Deputy Rowell indicates that neither driver appeared to be under the influence of medication, drugs, or alcohol, and that the physical evidence showed neither driver was exceeding the speed limit. *Doc. 68-4* at 2, 3. Mr. Caddell testified

---

Q: Do you believe that you left a safe distance in between the vehicle in front of you with a 40,000-pound vehicle to slow down properly if something—if he was to slow down?
A: Yes and no.
Q: Okay. Why yes and no?
A: Normal circumstances, yes. These circumstances, no.
Q: Why "these circumstances, no"?
A: Because the vehicle ahead of me hard braking and came to an almost complete stop.
Q: Okay. But if you had left a safe distance in between you and the vehicle in front of you, you would have had time to slow down; correct?
A: Yes.

*Doc. 68-3* at 13–14, 68:12–69:1.

[8] The Court assumes without deciding, for purposes of this motion, that cell phone use might establish the requisite level of intent. *But see Fuller v. Finley Res., Inc.*, 176 F. Supp. 3d 1263, 1268 (D.N.M. 2016) (holding the driver's use of a cell phone did not reflect a culpable mental state sufficient to justify punitive damages under New Mexico law).

that he slept eight hours the night before the collision, *doc. 64-1* at 12, 38:6–8, worked for only two and a half hours before the collision, *id*. at 12–13, 38:25–39:2, and was not ill or experiencing mental stress, *id*. at 14, 43:3–7. In short, the facts that have been shown on summary judgment cannot reasonably support a finding of liability beyond negligence.

Although Plaintiff purports to dispute some of these facts, he has not met his burden to designate specific facts in opposition. *See doc. 68* at 7–8; *Anderson*, 477 U.S. at 250. Plaintiff contends that "[w]hether Defendant Caddell consumed alcohol in the hours prior to the collision is a genuine issue of material fact, due to the fact that Defendant Caddell did not submit to a post incident alcohol test within the eight-hour requirement set forth in the Federal Motor Carrier Safety Regulations." *Doc. 68* at 7. But he presents no evidence from which a reasonable factfinder could conclude that Mr. Caddell was intoxicated at the time of the accident. The *absence* of evidence to support Plaintiff's position is not sufficient to defeat Defendants' summary judgment motion. *See Celotex*, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case."). Plaintiff also argues there is a genuine dispute of fact with respect to Mr. Caddell's fatigue and hours worked because of "Defendants' refusal to produce Defendant Caddell's logbook and trip report."[9] *Doc. 68* at 7. Once again, however,

---

[9] To the extent Plaintiff believes that the failure to produce these documents violated discovery rules, the correct mechanism to present the issue to the Court was a motion to compel under Fed. R. Civ.

Plaintiff has failed to produce sufficient—or indeed, any—evidence from which a rational trier of fact could resolve these issues in his favor. *See Thom*, 353 F.3d at 851. The Court therefore finds that under the facts shown, Mr. Caddell is entitled to judgment as a matter of law on the issue of punitive damages.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment on Punitive Damages (*doc. 64*) is GRANTED.

**IT IS SO ORDERED.**

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**

P. 37(a). The Court cannot properly, and will not here, attempt to resolve discovery disputes on summary judgment.